Good morning, your honors, morning, counsel. My name is Megan Ledbetter with the Office of the State Appellate Defender. I'm representing the defendant appellant, Jason Lara, and I expect that my argument will take about 15 minutes, and I'd also like to reserve a few minutes for rebuttal, if possible. Very good. Good morning, counsel. Good morning. Assistant State's Attorney, Jessica Ball, on behalf of the people, and I'd request 15 minutes as well. Very good. Let me advise the attorneys that we have read the briefs and we've read the cases, and I recommend that you get to your strongest argument and proceed from there. You may proceed, Ms. Ledbetter. Yes, thank you. May it please the Court? I briefed six issues in this case, and I'd be happy to take questions on any of them, but I intend to issue one, being that the State did not prove the corpus delecti of predatory criminal sexual assault, because the only evidence of penetration came from Jason Lara's extrajudicial pretrial statement, and issue two, being that the Court erred in denying a lesser-included offense instruction on aggravated criminal sexual abuse. I'll begin with the corpus delecti issue. Could you first tell us about the scenarios, about what happened? The dates of the offenses aren't important, but starting from the victim telling one person, and the mother came in the room, and then something happened in the afternoon, and something happened in the evening. Could you go there? Sure. I can give you a brief summary of the facts. The victim, who we call J.O., gave three out-of-court statements. The first one was actually to her mother's boyfriend, a man named John Cordero, and that was sometime in the morning. What happened was they had picked her up from her stepfather's house, and with the purpose of questioning her about whether she had been sexually abused, and the boyfriend took her into another room and asked her if she had been actually touched by her stepfather, and she said no, that it was the defendant who had done it. And then after that exchange, she did not, she just said that he touched her, you know, he touched her vagina. She didn't, wasn't any more specific than that. Then she spoke with her mother immediately after that, Augustina Pagan, and said pretty much the exact same thing, didn't say anything about any type of insertion of the finger, just that Lara touched her vagina. And then her mother called the police, and later in the afternoon, J.O. ended up at the Child Advocacy Center and had an interview. The mom didn't go into the bedroom and talk to the victim? Pardon me? I thought the mom also went into the bedroom and talked to the victim. Yes, Your Honor, she did. That's what I was trying to say. After John Cordero, the boyfriend, talked to her in the bedroom, the mother also went into the bedroom and spoke with her, and their conversations were very parallel. And touching in both cases? Yes, touching. Penetration? Yes, she definitely didn't say anything about penetration, said that he touched her vagina. That's pretty much the extent of it. She used a different language, her private part, touched her private part. Then later in the day, she speaks with the forensic interviewer, Corey Cato, at the Child Advocacy Center, and she tells Cato specifically that Lara touched the outside of her vagina on both occasions. There are two touching instances that happen a couple days apart in January or February of, I believe, it's 2005. Cato is a professional, I take it? Yes, a professional forensic interviewer, and it doesn't say how the information exactly was elicited, whether the interviewer asked J.O., was it the inside or the outside, or whether J.O. volunteered that information. But at any rate, she did testify that J.O. specifically said that he touched the outside of her vagina on two occasions. Counsel, the Sargent case makes it very clear that when you have a case like this one, where the state attempts to prove the corpus delicti with a confession, that the corpus delicti cannot be based or proved exclusively on the confession. What other evidence is there in this case to corroborate the defendant's confession? And I'm, of course, pointing to specifically that part of the confession where he said he penetrated J.O.'s vagina. I think that's precisely the issue, Your Honor, is that there is literally no evidence whatsoever that corroborates the act of penetration, and in fact, it is actually contradicted by the state's other evidence. J.O. makes three out-of-court statements, and she also testifies in court. At no point does she say that there was any type of insertion of the finger, or that even that there might have been, or that she's not sure because she wasn't awake. She doesn't say anything to that effect, and she specifically says in one of her out-of-court statements that it was outside her vagina. And I would also mention that the state, of course, because she testified, did have an opportunity to ask her if there was any penetration and, you know, forfeited that opportunity for whatever reason. And so there is no evidence, and I think that you're exactly right that Sgt. stands for the proposition. Sgt. really makes clear that it is the crime and not a crime, as was said in Salinas, and that's really the central issue of this case. Does the state's evidence have to prove a crime that then can be confession to prove the rest of the offense? Or does the state actually have to corroborate every element of the offense that they're trying to prove? In this case, their evidence certainly would corroborate the lesser included offense of aggravated criminal sexual abuse, but there's no corroboration of penetration and hence no proof beyond a reasonable doubt of predatory criminal sexual assault. So are you admitting that the state proved aggravated criminal sexual abuse? Yes, basically we do. We are asking for a reduction in the degree of the conviction pursuant to Supreme Court Rule 615B3 that says basically because the state did not meet its burden with respect to the greater offense, but there is evidence, they did meet their burden of proof with respect to the lesser offense that it should be reduced, and that's what happened in Rowell, for example, as well. But we're also asking for a new trial. Was there ever a medical examination? I'm sorry? Was there ever a medical examination of the child? No, there wasn't. There was no medical examination and no, well, there was a doctor actually. She did see a doctor at the Child Advocacy Center, but there was no testimony other than that she saw a doctor and had a medical exam. There was no testimony about what it revealed that would have been. So that we put this in perspective, how long after these assaults did she see the physician? Was there a radius with the assault? No, and it's actually not 100% clear how long after because the exact dates of the assault are not locked down. We know that they happened a few days apart, three days apart, I believe, in January or February. And then the discussions that J.O. has with John Cordero, with Augustina Pagan, and with the forensic interviewer all happened on February 18th. So it's not entirely clear how much time is left. Is that the time everything happened on the 18th? All of the out-of-court statements happened on February 18th. You forgot to say when the defendant made his statement. That was at night after the other two talked about touching? Exactly. I apologize, but I don't remember the exact number of hours that the defendant was in custody, but I believe somewhere in the order of about 12 hours. That might not have been completely clear from the evidence either. 935 it was signed, p.m. Yeah, exactly. He signed it in the evening, and he had been in custody for some number of hours. He testified that when he was in his jail cell prior to the interrogation where he confessed that he believed that he had a seizure, and he is a severe epileptic, that's all of record, and he said that he believed that he had a seizure in his jail cell. And there was also an expert who testified that in the aftermath of a seizure, you would have a period of confusion. And this expert also testified that Jason Lera did have severe grand mal epilepsy and that he had a low seizure threshold at the time of his arrest because of his medication. He was saying that night or that day that he had a seizure. Well, he testified to that, Your Honor, and his expert testified to the plausibility of what he was saying happened. Well, in a seizure, which I actually helped two people go through, but in a seizure, there are signs of it for a while. Right. Yes, well, the doctor testified that there would be a period of anywhere from 30 minutes to several hours of confusion and basically corroborated the plausibility. What Lera had said was that he did not touch the jail, but he did make statements to the effect that he did to police for some reason, because he was saying that he was psychologically coerced, that he was in a vulnerable state of mind, in a post-epileptic state of confusion, and that he was basically coddled into the confession. When the state's attorney police interviewed him at night, I suppose the question is, does he have anything to say about the fact that he did touch the jail? Well, I think it's not at all clear from the evidence that he volunteered that. I think one of my major points here is actually that the corpus electi rule itself, the rationale for the corpus electi rule is very consistent with the circumstances of this case, because the rule is designed to prevent confessions in a psychologically coercive environment. For example, Lera was particularly vulnerable to this type of psychological coercion for reasons of record. He was 19. He was unemployed and lived at home with his mother. He was a severe epileptic. He had attention deficit disorder. And I think it's very plausible to imagine the police saying to Lera, you're guilty of an interrogation. And Jason, when you touched J.O.'s vagina, did you maybe put your finger in there just a little bit? Not very much, right? But just up to the fingernail? We don't know what happens in the privacy of an interrogation. That's one of the main points in Miranda, that police use these tactics. They posit your guilt as a fact and hope to confirm certain details, such as, for example, a penetration. And it's very plausible that Lera confessed to a penetration, and in fact something else had occurred, but he was coddled into that last step in a psychologically coercive interrogation. Is that a factual issue? Well... The jury heard that he may have had a seizure. Yes. They may have done this, may have done that, but they found him guilty. Well, the factual issue, I believe, does play in exactly to argument two, which is that the jury was totally stripped of the option of believing part of his pretrial statement, but not all of it. And in this case, obviously, you know, it's an issue of law at this point as to whose interpretation of the corpus delecti rule is correct. Either the corpus delecti rule... I believe so. If they believed him, they would have found him not guilty. Well, the thing is, the corpus delecti rule actually doesn't care what the extrajudicial confession... Yes. Well, the seizure is not really, whether or not you believe he had a seizure is ultimately not relevant to the corpus delecti question of whether or not the state proved beyond a reasonable doubt that he committed predatory criminal sexual assault. I'm saying they didn't prove that offense, and it is the offense, they didn't prove the offense of predatory criminal sexual assault beyond a reasonable doubt because they didn't show anything, put nothing in to corroborate the act of penetration. I notice that you are maintaining that the police took advantage of this gentleman. I did notice that he graduated from high school and he was attending college. He had to drop out of college because he couldn't concentrate, he said. And although, you know, he may have graduated high school, I don't think that that makes him invulnerable to the psychologically coercive environment of police interrogation, particularly if he had just had a seizure and was confused. It's the idea that what he's presenting as why he gave a false confession is plausible. It makes sense. It's not as though it's completely ridiculous and you can write it off as nonsensical. Well, the only reason I ask about how far he went in school and what kind of statement, I was struck by the fact that he discusses this assault with this precision. Jason states he placed his finger inside her vagina, but that it went in as far as his fingernail up to his cuticle. Now, I was a little surprised to hear him use the word cuticle. Well, the truth is, Your Honor, we don't know and can never know who first used the word cuticle. It does say Jason States, but it's not as though Jason hand-wrote the statement from scratch. This was, it could have been, in fact, he was interrogated, you know, several times and the police could have put this story together. And I'm not, one of the points here is that just because the confession is deemed voluntary and admissible, that does not make it 100% true and correct. That is the nature of the corpus delecti rule. We take for granted all the time that extrajudicial confessions or statements of defendants are not completely correct. Sometimes the States case relies on that fact. But isn't your position essentially that the confession isn't corroborated? It is not corroborated in that very material detail, and it is, in fact, contradicted in the material fact that he penetrated her with his finger. She did not say that, and there's no reason to think that she would have had any problem testifying to that if that occurred. You would say then that her statement, the victim, would not corroborate. It doesn't have to be beyond a reasonable doubt, but it has to lead to that. And she said, he touched me. Wouldn't that tend to prove the statement was correct? Your Honor, I believe it would tend to prove, or even in that case perhaps prove, be sufficient proof on its own, of aggravated criminal sexual abuse. I don't believe it has any tendency whatsoever to corroborate the offense of predatory criminal sexual assault, because that offense has an element, penetration, that must be proven beyond a reasonable doubt. What's the difference between predatory criminal sexual assault and aggravated criminal sexual abuse? Maybe you need to tell us so that we're clear.  Penetration is the difference. Penetration, yes. Criminal sexual abuse just involves a touching. Yes. A touching of the external genitalia of the child would be an aggravated criminal sexual abuse, which, again, we're conceding has been proven beyond a reasonable doubt with J.O.'s in-court and out-of-court statements as corroborated by Lara's confession or vice versa. But this final element has not only no proof beyond a reasonable doubt, it's because it has no corroboration from Jasmine and is, in fact, contradicted. But it would tend. Tend to prove it or not tend to prove it. I believe... You're saying it absolutely does not tend to prove anything. It does not tend to prove predatory criminal sexual assault because it does not tend to prove penetration. It's the opposite. Because penetration is required. Yes. In order to establish that offense. Exactly, Your Honor. So if Your Honors have no other questions about the corpus delecti issue, I would move on to the instruction issue. Yes. Proceed. Thank you. This is important. That whether the Court agrees with our interpretation of the corpus delecti rule or not, the weakness of the evidence as to the element of penetration really underscores the necessity of a lesser included offense instruction on aggravated criminal sexual abuse, which is, again, is offense that does not require the element of penetration. If there was just an external touching of Jasmine's vagina, pardon me, J.O.'s vagina, that would be aggravated criminal sexual abuse. And in denying the defense request for this instruction, the Court really robbed the jury of an important third option as fact finder. The State's argument on this issue on appeal is premised on the notion that no rational jury could possibly have found Lyra guilty of predatory criminal sexual assault. I'm sorry, not guilty of predatory criminal sexual assault, but guilty of aggravated criminal sexual abuse. That's obviously not the case, however. The evidence that they put on saying he didn't do it. He did do it? He did not do it. The defense. The defense? Well, the defense put on the testimony of Lyra, who said that he basically gave this statement in a post-Caesar State where he answered a litany of yes or no questions and signed this statement without really being able to understand it. He also said that he didn't touch J.O. at all. But the jury as fact finder is free to reject that part of Lyra's pretrial statement and accept the part of his trial testimony where he suggests that this was a coerced confession. And that's actually the central issue, because it is so easy to imagine a jury that mistrusts Lyra's pretrial confession but believes J.O. in court testimony and out-of-court statements. If they believe J.O. but distrust the confession, then they're going to convict him of aggravated criminal sexual abuse. And this issue is really that simple. The court just, even though the defense asked for this instruction, thereby essentially making it part of the defense theory of the case, the court flat-out refused to give the instruction and took something away from the jury as fact finder. And for that reason, Lyra needs a new trial. But during the trial, the defendant said, I didn't do anything. That's right. He didn't do anything. He said he didn't do anything, and he also said that the reason that he said he did something was because he answered this litany of yes or no questions and then signed this statement that wasn't really true in its material parts. So I think there's a two-part theory there. But another really important point is that it doesn't matter whether the defendant gives a theory of the case or where the evidence comes from that supports the lesser-included offense instruction, because the law in this area is actually very clear that where there is some evidence, however slight, that supports a lesser-included offense instruction, the defendant must receive it upon request. The state posits in its brief that it shouldn't be allowed if it's inconsistent with the defense theory of the case. They cite a case called Monroe for that proposition. Monroe basically proves the opposite, because in Monroe, the defendant did not testify, and other witnesses testified to differing things. It was a burglary case. Some said that they had entered the building with the intent to steal, and one said that they had entered the building with the intent to mess around. And the court found that just because that one witness said that they had the intent to mess around, that that was sufficient evidence to entitle the defendant to a lesser-included offense instruction. In this case, you actually have the evidence for a lesser-included offense instruction coming from two sources. One source, obviously, is the state's case. Three out-of-court statements from J.O. support a lesser-included offense instruction. The in-court testimony of J.O. supports a lesser-included offense instruction, and Lyra's testimony that he did not give a true confession because he was in a psychologically coercive environment and confessed to doing things that he didn't do also is consistent with a lesser-included offense instruction. So there's ample evidence to support this instruction. It's really a very clear violation of the law that the court … Is it harmless? No. I think, to me, that argument really borders on silly. The idea that it could be harmless to strip the jury of this very plausible choice, the plausibility of the jury's believing J.O., believing the victim, the child victim, and disbelieving Lyra can't seriously be So if the court does not reduce Lyra's convictions to aggravated criminal sexual abuse pursuant to the first argument, Lyra must receive a new trial in which the jury is properly instructed on the lesser-included offense of aggravated criminal sexual abuse. Thank you. Any further questions? Okay. Thank you. Are there no further questions? You've reserved a few minutes for rebuttal? Yes, please. Okay. Very good. Ms. Ball, as you can see, she's exceeded her time, so we are going to give you as much time as you need. Thank you. Please proceed. First of all, I'd like to just point out that the defense argument actually combines the first two issues. I'd like to separate them and talk first about corpus electi. And to clarify that, the State is not asking for a new interpretation of the rule. We're asking for this Court to apply the rule as it exists today. With that in mind, counsel, tell us what facts corroborate his part of the confession where he talks about penetration. If I could … Take us to the witness. I'm going to take you back one step from there, if I may. Because the State's position is that we don't have to corroborate every element of the charge defense. There is no case that holds that. So you're essentially saying, arguing, that you don't have to corroborate penetration. Absolutely. Is that correct? That's your position? Correct. As Justice Quinn actually authored in the Salinas opinion, that if the independent evidence is directly related to the charge defense, then the independent evidence only needs to establish that a crime occurred, not the specific crime for which the defendant was convicted. So what crime occurred here? Predatory criminal sexual assault. Without penetration, because you don't have any corroboration. No. For corpus delecti, what was proven, the victim's testimony is that she was sexually assaulted on two instances. Her testimony alone establishes aggravated criminal sexual abuse. And that evidence … Okay. So you can see that. She says she's willing to admit that she's proved aggravated criminal sexual abuse. Yes. Okay. That testimony and that crime is directly related to the charges of predatory criminal sexual assault that he committed on those two instances. So the independent evidence … What if he had taken that additional step? Which … Which is the penetration. Which he did. Which is the penetration. Yes. But the independent evidence establishes that a crime occurred that's specifically related to the crime that he was charged with. And it also tends to inspire belief in the defendant's statement. That's what the corpus delecti rule requires. Once that's done, together, the independent evidence, together with the defendant's confession, together proves the corpus delecti. You don't need to look at just the independent evidence to prove the corpus delecti. That's not the rule. The rule is that the defendant's … Counsel, let me ask you this question.  Mm-hmm. Do they cite Salinas in this case? Not in the majority's holding, I believe. Okay. However, what that case holds is not that every element needs to be proven. What Sargent says is when a defendant confesses to multiple offenses, there must be independent evidence of each count. Not … And it says the independent evidence tending to show that the defendant committed each of the offenses for which he was convicted. If they wanted to, they could have said that that independent evidence must establish the crimes that he was charged with. But no case has held that yet. Counsel, what we have not discussed is the independent evidence. The independent … What is it? Very clearly, the independent evidence is the victim's outcry testimony and her compelling in-court testimony, her outcry statement. Where she testifies about a … Touching. Yes. Let me … I'd like to argue that the defendant's version and what Your Honor is suggesting is an … I'm not suggesting. I'm just basing my questions on the record. I'm not suggesting anything. That's what the record says, correct? Yes. If I'm wrong, show it to me. But to be clear, the independent evidence does not have to establish penetration. There is no case out there. Sargent doesn't say it. No case says that every element needs to be proven. And to do that would require the State to prove its case beyond a reasonable doubt without considering the defendant's statement just to prove the corpus delicti. And to demonstrate that, I'd like to take an example of a digital penetration case with a female child where the digital penetration is to the child's sex organ. The law is clear. The female sex organ is not comprised of just the vagina. There are external and internal structures. And the external structures include, among other things, the labia majora, the labia minora, the clitoris, and the vaginal opening. It's also clear that penetration is not just where the finger penetrates the vaginal opening. Penetration is anything past the labia majora. So it's penetration if a defendant touches the labia minora, the clitoris, the outside of the vaginal opening, or even the inside of the labia majora. And there will not be physical evidence to corroborate that type of abuse or that type of penetration. So taking the defendant's argument to its logical conclusion, which no case has held yet, where every element, including penetration, would have to be corroborated, would require putting a child victim on the stand to testify to exactly and precisely where on her genitalia she was touched when she doesn't understand that she has a labia majora or a labia minora or clitoris. Let me ask you this question, counsel. Of course, this Court looked at the statute that this man is accused of violating, and the statute uses the term sexual penetration. And there's a definition for sexual penetration, and it involves intrusion. Yes. Where is the intrusion? That's what the definition says in the criminal code. The intrusion in this case is finger into the vagina. That's the intrusion. And we can use the defendant's... And that's what he said in his confession. Yes, but that's to prove beyond a reasonable doubt our case, not to prove corpus delecti. Let's not combine the two. First, corpus delecti. Then we can show that it was proven beyond a reasonable doubt. Well, then you must show that there's some corroboration of the extrajudicial confession. And we have that. There is no doubt that his statement is corroborated, but not every element needs to be corroborated. And it's... Yes, sir. So you will concede that you have not proven penetration or intrusion? No, I will not concede that. Because this is not a case where the victim's testimony is at odds with the defendant's statement. I absolutely disagree with the defense counsel's interpretation that the victim's testimony is inconsistent with that. This is not a case where the victim's testimony excludes the possibility that she was penetrated. It is not at odds with the defendant's statement. It is absolutely consistent with a childlike description of what happened to her. Counsel, you are suggesting that there was a possibility now of penetration or intrusion? That's your argument? No, we proved penetration. There is... I'm sorry. What you seem to be saying is he confessed and she all along has been saying his hands were down her, under her panties, I think it says. She says that his hand touched the outside of her vagina. So... Does that alone... So he, in his confession, he admits that he was there. Forget the fact of penetration. And when she told him about touching, that tends to prove his confession was right. Absolutely. And that's what the corpus delecti rule says. It's exactly that. That her... So you're relying on Harris, Richmond, I don't know how to pronounce this. Is it Sargent? Sargent says that. Dalton says that. There isn't a case that doesn't say that. The independent evidence must tend to establish that a crime occurred. And if that crime is directly related to the crime with which he was charged, then together you prove it. Sort of like the jury instruction you're going to get. We can get to that. But I think that's a very distinct separate issue. Because, first of all, once we prove the corpus delecti, which we have, is corroborated, the defendant's statement is corroborated, then that defendant's statement is in our body of evidence. And it's part and parcel of our proof that we can use to establish beyond a reasonable doubt penetration. And that's what happened here. Just to clarify, this is not a case where the defendant's confession is talking about a crime that's not corroborated by any independent evidence. He's not talking about an armed robbery or a drug transaction. And there's a difference between a case where the independent evidence establishes that a crime occurred, and a case where the independent evidence does not establish that a crime occurred. We don't have that here either. And our case is totally different from a case where the victim said it didn't happen. Or where the victim's testimony excludes the possibility that multiple offenses happened. This is factually distinguishable from Richmond and Sargent. Here, the victim's testimony does not exclude the possibility that he penetrated her. Her testimony is not at odds with the defendant's statement. It's consistent with it. This is a childlike understanding of what happened to her, and the corpus delecti rule requires no more. In this case, our independent evidence establishes that two crimes occurred by the victim's testimony alone. And that independent evidence is directly related for the charge that he was convicted of, the predatory criminal sexual assault. And this independent evidence absolutely inspires belief in the defendant's statement. That's what corpus delecti requires. That's what our independent evidence does in this case. Therefore, the defendant's confession is sufficiently corroborated to be able to be part of the corpus delecti of predatory criminal sexual assault. And that's our position. That's what we've proven here. If there aren't any questions, any additional questions on corpus delecti, I can discuss the instruction. Please proceed. Regardless of whether the instruction should have been given, this issue must be subjected to a harmless error analysis. And in this case, the result of the defendant's trial would not have been any different if the instruction had not been given. Let me ask you this question. Your opponent maintains that in order to be entitled to that instruction, there must be some evidence to support it. Is there some evidence to support aggravated criminal sexual abuse? Is there some evidence? Is there some evidence? Yes, there is some evidence there. So why is the defendant entitled to the instruction? Regardless of whether he was entitled to it. The fact that it wasn't given is harmless. Okay. So you're saying he may have been entitled to it, but it was harmed. Correct. Okay. Here, the elements of predatory criminal sexual assault are very straightforward. The defendant is over the age of 17 and commits an act of sexual penetration against a victim who is under 13. And the evidence here clearly and convincingly showed the defendant was 19, the victim was 8. He admitted to sexually penetrating her twice. And the defendant's statement is corroborated by the victim's in-court compelling testimony that he did assault her on those two instances. The evidence here is nothing short of overwhelming. And to prove that point, the defendant does not even raise a reasonable doubt argument in his brief. Instead, what he does, as I mentioned, as she does, as I mentioned before, is combine the corpus delecti issue with this jury instruction issue to present what he believes is a stronger argument. But they have to be separated. First, once the defendant's statement is corroborated, it's in our evidence. And we get to use it to prove our case beyond a reasonable doubt. And using that statement in this case, there's no doubt the evidence is overwhelming. And the defendant knows that. So he tries to present two arguments, albeit weak ones, that his statement was unreliable and shouldn't be considered. First, he said it shouldn't be reliable because he disavowed it at trial. But that doesn't matter. The jury makes credibility determinations. It didn't have to believe and obviously didn't believe the defendant's in-court testimony. If they had, we wouldn't be standing here. And the defendant also argues that his statement is unreliable because it was given after a seizure. But the trial court here already determined that that statement was admissible. And the defendant doesn't contest that decision on appeal either. And the defendant still presented his arguments and his evidence to the jury that he was in this post-seizure state. The jury didn't buy it. They didn't have to. They didn't believe his in-court testimony. And that's because there's not a shred of credible evidence that the defendant suffered a seizure or was confused at the time he gave a statement. The statement he provided was very detailed. It was very specific. There is no chance a jury could have found that statement unreliable, especially where it was corroborated by the victim's testimony. Given these facts, the jury could not have found him guilty of anything less than predatory criminal sexual assault. In essence, the defendant wants you to stand in place of the trier of fact, which we know is not proper. The evidence here overwhelmingly proves the defendant guilty beyond a reasonable doubt. Each and every element of predatory criminal sexual assault was proven by clear and convincing evidence. Again, the results of this trial would not have been different even if that instruction had been given. Hold on for one moment, please. Again, in the morning, ma'am and her friend interviewed her separately. Yes. And they both said, touch, touch. Then in the afternoon, they used to find everything they knew. She was interviewed by this caseworker, and she said, touch. Correct. So the state's attorney didn't know anything until he volunteered penetration. Absolutely. The information within the defendant's statement comes from the defendant himself. It's not something, there's nothing in the record that indicates that any of that information was fed to him. It seems like, and then I watch television, it seems like when something like that occurs with this professional interviewer, she should have asked about it. Unfortunately, I think what happens is when you're talking about the vagina, to go back to its many structures, it's not clear, it's not well understood, even in the professional field, what penetration means or what penetration or intrusion can constitute. She would have asked about penetration instead of relying upon all the notes there. Was this touching? I didn't hear you. Why didn't she ask about penetration? Why did the interviewer, the forensic interviewer? Yeah. I don't know if she did or did not ask specifically about penetration, but even if she did, the victim's understanding of what that might mean may not be consistent with the legal and anatomical understanding of what intrusion or penetration is. I thought they put it down to the child's age and intelligence. I just can't see why that wasn't asked. Was there any, she would testify. Ms. Cato did testify. But I still think it's important to understand that when you're talking about corpus delicti alone, it is not a burden, it's not the rule for us to prove penetration. It is our burden to show that his confession is corroborated, that the independent evidence tends to corroborate that confession. We don't have to show independent evidence that she was penetrated. But counsel, the statute does provide that there must be evidence of sexual penetration. Penetration is intrusion. That's in the statute. To prove it. And you're saying you don't have to prove it. No, I'm saying for corpus delicti. I think, Justice Holman. Corpus delicti is proof of the crime. Corpus delicti is, yes, proof of the crime. Yes. And the crime here is predatory criminal sexual assault. Yes. Which requires sexual penetration, which is defined as intrusion. You have to prove that. We have. And you want to know how? Well, we've been over it. But I'm concerned that there's a misconception here. And we have to separate corpus delicti from proof beyond a reasonable doubt. And we can use the defendant's statement to prove the corpus delicti. We don't ignore that. We don't close our eyes to that. The law says if we use the confession in part to prove corpus delicti, it has to be corroborated. Correct. We have that. The law doesn't say the confession has to be corroborated in every detail. The law doesn't say we have to have independent evidence to prove every element of the charged offense. And again, I think Justice Quinn of this division wrote it very, just said it so precisely when he said, if the independent evidence is directly related to that crime charged, it must prove that an offense occurred. Then together with the defendant's confession, it proves the corpus delicti of the crime charged. But with all due respect for Justice Quinn, the presiding judge of this division, Sargent is a case where the defendant confessed to touching the kid's penis. Yes. There was no evidence of that. So what did they do? They reversed. They said, with respect to that count. Right. Okay. What's the difference? Very clearly. Sargent said that when you have multiple offenses, each count has to be corroborated by some other evidence. And so in that case, there were multiple counts of finger-to-anus penetration. And there were two counts of hand-to-penis touching. But the independent evidence only established one instance of finger-to-anus penetration. So would you distinguish Richmond the same way? Absolutely. Those cases don't hold anything different than any of them before. If there are multiple offenses, then each of them need to be corroborated. We have that here. We have two counts of predatory criminal sexual assault. The victim testified that he touched her on those two instances. There is independent evidence that does tend to corroborate and tend to establish both of those offenses. They're very different in that regard. And, again, Sargent even says the independent evidence tending to show, not show, not establish the crime. The whole purpose of the corpus selecti rule is to inspire belief in the defendant's statement. And that's done here. To require anything more, really, you're meeting with absurd results. Having a child victim testify to things that she doesn't really understand yet. And it would absolutely be counterproductive to the law's attempt to protect child victims from sexual predators. It was an impossible counsel since, with respect to the first assault, J.O. was asleep. So maybe she doesn't really know what occurred. Absolutely. That was in my brief. If you've got a young child who is either asleep or groggy from sleep and is not, you would hope in any type of assault that this child is not being forced to look at what the defendant is doing to her. And you're hoping that this child is not even thinking about what he's doing to her. Trying to remove herself from the situation just so she can physically and emotionally survive the attack. That's the reality of it. And in this case, we even have more because she was asleep. Or she had just woken up and was groggy. And she's not going to fully understand what the defendant did to her, especially since it was only a slight intrusion into her vagina. We do have that evidence, that independent evidence, tending to establish that a crime occurred directly related to the charged offense and inspiring the belief in the defendant's statement. The people submit that the cases require no more. Thank you, counsel. Thank you. Ms. Ledbetter, some brief rebuttals. I'd just like to address a few points very briefly. First, the state obviously, as your honors may have noticed, has yet again forfeited the opportunity to argue that they put any evidence whatsoever into trial that corroborates the act of penetration. You're saying basically he put his hand on me, didn't corroborate? She says he had his hands in my panties, and that doesn't tend to say he had actual penetration? No, your honor, it does not. And not only do I think that, but the state has conceded that twice. So you disagree with all these cases? Oh, no. No, your honor. My point in coming up here is actually to reclaim these cases. The state returns again and again to Salinas and saying that Salinas is the go-to case for this idea that they don't have to prove the crime, they have to prove a crime. And because they proved a crime and Jason Lehrer confessed to another crime, they proved the corpus delecti beyond a reasonable doubt. Here's the problem. Salinas, first of all, is distinguishable. In that case, the state put on evidence of a motive, independent evidence of a strong motive. The victim in that case had been taking photos of dilapidated buildings and reporting the defendant for violations. He had been fined. He had been imprisoned. And that motive was corroborated with independent evidence. So that motive was actually a corroboration on the element of procuring these individuals to kill the victim in that case. In this case, we don't have any motive or any other evidence. And as I believe Justice Neville pointed out, or perhaps not, there is a dissent in Salinas from Justice Reed, and the dissent specifically takes issue with that line and says, actually, it's not a crime, it is the crime. And because Sargent is the most recent pronouncement on this issue, if you wouldn't mind, I would like to, because the state has paraphrased what Sargent says, if I could, I would like to actually read to you what Sargent actually says. And please keep in mind that Sargent was decided after this A crime, V crime dichotomy became an issue. A crime, V crime became an issue after Richmond and Salinas basically disagreed about it, and the second district and Sargent. And here's what the Supreme Court had to say just at the end of last year. Would you tell us the page you're reading? Yes. I have the case. Yes. The citation that I have is to the Northeastern Reporter. It's 940 NE 2D at 1055. Okay. But can you tell me the state report page? Unfortunately, Your Honor, I don't have that in front of me. That's okay. The quotation is, although the corroboration requirement demands that there be some evidence independent of the confession tending to show the crime did occur, that evidence need not by itself prove the existence of the crime beyond a reasonable doubt. If the defendant's confession is corroborated, the corroborating evidence may be considered together with the confession to determine whether V crime and the fact that defendant committed it have been proven beyond a reasonable doubt. And Sargent is deliberate in using this V crime language, and truly there is no authority prior to Salinas for A crime, V crime. Salinas cites to other cases, but with all due respect, it is literally taken out of context. The other cases are not literally saying A crime, and their analyses are totally consistent with that. This state is arguing that they don't have to corroborate every essential element. There are cases, there are Supreme Court cases that literally say that they do. I would draw Your Honor's attention to Sargent and Dalton. The court talks about how it must corroborate every essential element of the offense. It talks about how technically age is an element of the offense of indecent liberties with a child, and then creates a specific exception saying, well, age doesn't have to be corroborated because it's such a reliable sort of confession, unlike peculiar perceptions or recollections of a defendant who was under the psychological pressures of an arrest or indictment about what he said or did, which is exactly what we have in this case. I mean, these cases are directly on point. In Furby, the court said that the prosecution must present evidence outside of the defendant's confession that tends to show commission of the offense and is corroborative of the circumstances related in the statement. So the state's whole argument is that it doesn't have to prove the offense, and in fact it does. That's what Salinas says. It doesn't say the state must prove A offense, but the offense. Oh, Salinas says A offense. No, no, no, I'm saying that Sargent says they must prove the offense. Certainly. And when Sargent uses the crime language, it knows exactly what it's doing. Obviously it's cognizant of this debate. The other point I wanted to make is that the idea that Jasmine's statement about touching the outside of her vagina is not inconsistent with Lyra's statement about penetrating her vagina is not realistic. I mean, as Justice Neville pointed out, penetration in this context, when it's about a digit in a sex organ, the intrusion is required. Just to clarify that point, there must be an intrusion. However slight. However slight, yes, exactly. But outside is inconsistent with inside. It's just that simple. They're opposites. Outside is not consistent and certainly does not corroborate intrusion. And the State's argument about what Jasmine was thinking or why she didn't understand is pure speculation. And on that point, I would directly draw the Court's attention to Richmond. Because in Richmond, the defendant confessed to two contemporaneous crimes. He said that he penetrated, made contact in that case because it was two sex organs. He penetrated the vagina, then the anus in one incident. And the child victim said that he only penetrated her butt. And the Court reversed, saying that the, actually used the language, the penis to vagina portion of the defendant's statement is not corroborated. And the State's argument that while they're close and, you know, a touching of one sort of suggests touching of the other, they called pure speculation. That is analogous to this instance. The vagina count was thrown out, but still convicted of the penetration of the anus. That's right, because the State corroborated penetration of the anus. Just as in this case, they corroborate contact with the vagina, they do not corroborate intrusion of the vagina. And you must throw out that count. And my final point is just that the harmless error argument, the State apparently is going to hang its hat on harmless error on the second issue. They say that jury didn't buy what defendant testified to. But, of course, the jury is not obligated to buy whatever Lara says wholesale or discard it completely. That's exactly what the State wants to corner them into doing. You can either have it all or have none of it. But my whole point is that they were deprived of the middle ground. And he needs a new trial. Thank you.  No. Just as Murphy has. I'm sorry, I didn't hear. I think she said he placed his hand down to touch my vagina. Then she's interviewed, and the interviewer says, okay, penetration, penetration. Then for the first time during the interrogation with the State's attorney, he says penetration. So she puts his finger there, and he said penetration. Her testimony doesn't seem to trend to prove that element. He had his hand right there. No, Your Honor. I believe because the hand right there is aggravated criminal sexual abuse, and the hand inside is predatory criminal sexual assault. His hand is right there, and he says in his confession, I put it in. No, but I have a good analogy. Certainly, I've answered that question. I believe the answer is no, it does not tend to prove. Something that would have tended to prove, okay, but not been proved beyond a reasonable doubt would be, for example, if J.O. had said, well, I thought I might have felt something in my private part, but I'm not really sure. Or if she said, well, I just woke up and I saw his hand, like, coming out of my private part, so I'm not really sure. You're basically also saying that they must prove beyond a reasonable doubt that this tends to establish his confession was true. Well, pursuant to due process, they must prove beyond a reasonable doubt the offense. Pursuant to the corpus delecti rule, they must corroborate every element that is otherwise only proven by the defendant's confession. And I believe that the case law that I've cited actually makes that point quite clear, in particular Sargent. Any further questions? Thanks very much. Thank you, Ms. Ledbecker. Better. I want to compliment the attorneys on their arguments and on their briefs. And this matter will be taken under advisement.